**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CHRISTOPHER YOUNG,**

**Plaintiff,**

**v.** **Case No: 6:13-cv-816-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

# MEMORANDUM OF DECISION

Christopher Young (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits filed on March 3, 2010, and his application for supplemental security income benefits filed on November 3, 2010. Doc. No. 1; R. 16.[1] Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) not developing a full and fair record; 2) not considering all the relevant medical opinion evidence; 3) not considering the combined effect of his impairments; 4) finding his testimony concerning his pain and limitations not credible; and 5) finding he can perform work available in the national economy. Doc. No. 26 at 2-6. For the reasons set forth below, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

---

[1] Claimant alleged that his disability began on February 1, 2010, and the ALJ found that Claimant meets the insured status requirements of the Social Security Act through June 30, 2011. R. 16; 18.

## I. **STANDARD OF REVIEW**.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (the court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II. **<u>ANALYSIS</u>.**

### 1. Duty to Develop Record.

Claimant argues that the ALJ did not develop a full and fair record because he did not obtain a neuropsychological report referenced in the record and medical records from his podiatrist. Doc. No. 26 at 2-3. The Commissioner argues that Claimant waived his right to be represented at the hearing, and, therefore, the ALJ did not have a "special duty" to develop the record, nor did the ALJ promise Claimant that he would obtain the records at issue. Doc. No. 28 at 6-8. Further, the Commissioner argues that Claimant has failed to demonstrate prejudice since the record contains ample evidence concerning his physical and mental impairments, which the ALJ considered in rendering his decision. Doc. No. 28 at 9-11.

The claimant bears the burden of proving that he or she is disabled, and, thus, is responsible for producing evidence to support his or her claim for disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)). Nevertheless, since a hearing before an ALJ is not an adversarial proceeding, the ALJ has a basic obligation to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). This obligation requires the ALJ to develop the claimant's complete medical history for at least the twelve (12) months preceding the month in which the application was filed. *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(d)). Further, this obligation applies regardless of whether the claimant is represented by counsel, but it rises to the level of a special duty when the claimant is unrepresented. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). By implication, where counsel has been waived, the special duty to develop the record does not take effect. *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (citing *Brown*, 44 F.3d at 934). In determining whether it is necessary to

remand a case for development of the record, the Court considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown*, 44 F.3d at 935 (quotations and citations omitted).

On May 6, 2010, Dr. Malcolm J. Graham, III, performed a one-time mental health examination of Claimant. R. 419-21. In his report, Dr. Graham did not diagnose Claimant with any mental health impairments, noting that "there were no problems . . . in his attention or concentration, and there were no problems . . . in his recent or remote memory, although his response time on some of his attention and concentration tasks was somewhat slow." R. 421. Dr. Graham did not opine that Claimant has functional limitations caused by his mental health. *See Id.*[2] Likewise, the record contains two (2) psychiatric review techniques ("PRT") one dated June 24, 2010 and the other dated October 22, 2010, which largely rely on Dr. Graham's examination report in finding that Claimant is not suffering from or limited by any severe mental health impairments. R. 449-62, 583-96.[3]

On June 8, 2010, Claimant's treating psychiatrist, Dr. Karl Isaacs, conducted a mental health evaluation, and referred Claimant to a neuropsychology specialist, Dr. Leonard Briscoe, Psy. D., to rule out dementia. R. 443.[4] On July 29 and August 5, 2010, Claimant underwent neuropsychological and psychological examinations. R. 497, 632-38. On September 3, 2010, Claimant received feedback on the results of psychological evaluation. R. 496. The progress note documenting this feedback summarizes the results of his psychological evaluation as follows:

> [T]he results of his MMPI-2 suggest that [Claimant] is experiencing a significant level of chronic emotional distress that is characterized

---

[2] Although the ALJ discusses Dr. Graham's examination report (R. 22), he does not assign it any weight. *See* R. 16-28.

[3] The ALJ assigned these PRT's "some, but not significant, weight." R. 22.

[4] This is the first instance dementia is mentioned in Claimant's medical records. *See* R. 471, 599.

> by dysphoria, worry, and anhedonia. Individuals with similar profiles struggle [with] a strong sense of feeling alienation as well as with longstanding symptoms of depression, anxiety, and agitation.

*Id.* [5] On October 6, 2010, Claimant received further feedback about the results of his neuropsychological evaluation. R. 622. The progress note documenting this feedback summarizes the results of his neuropsychological evaluation as follows:

> [Claimant's] overall level of cognitive functioning falls significantly below what would be expected given his education and occupational history. As a result, his evaluation findings and current cognitive inefficiencies suggest a noticeable decline in his premorbid level of functioning.

*Id.*[6] Immediately below this summary, is a statement that a "neuropsychological report [is] to follow." *Id*. Despite this statement, the record does not contain a neuropsychological report from Dr. Briscoe, nor does the ALJ mention the neuropsychological report in his decision. *See* R. 236-668.[7]

Under the circumstances of this case, the Court finds that the ALJ did not develop a full and fair record.[8] Claimant filed his application for supplemental security income benefits on November 3, 2010, and, thus, the ALJ was required to develop Claimant's medical history for the twelve (12) months prior to November 2010. *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. §

---

[5] The ALJ does discuss this finding in his decision. R. 24.

[6] The ALJ did not discuss these findings in his decision. *See* R. 16-28.

[7] The parties agree that the record does not contain a neuropsychological report. *See* Doc. Nos. 26 at 2-3; 28 at 9. Moreover, on October 22, 2010, Dr. Leif Davis, Psy. D., completed a PRT, in which he states that the "details of the neuropsych testing were not provided in the record and [the] conclusions are not clearly explained in the notes." R. 595. Despite the absence of these records, Dr. Davis noted that Claimant "performed well on all tasks in the [examination performed by Dr. Graham] which would not be the case [were] the claimant [as] cognitively impaired as he is reported [in] other locations." *Id*. The ALJ assigned some weight to this PRT. R. 22.

[8] The Court notes that the ALJ did not have a special duty to develop a full and fair record in this case since Claimant waived his right to be represented during the hearing. R. 55, 120; *Robinson*, 235 F. App'x at 727.

416.912(d)). Included in this twelve (12) month timeframe is a progress note containing a summary of the results from the neuropsychological evaluation and a statement that a neuropsychological report would follow. R. 622.[9] Although it is not clear when the neuropsychological report was completed, given the dates of the examinations (July 29 and August 5, 2010) and the summary of the results from neuropsychological evaluation, the Court finds the ALJ should have obtained the neuropsychological report, pursuant to his basic duty to develop a full and fair record.[10]

The evidentiary gap created by the absence of the neuropsychological report results in clear prejudice. In May 2010, Dr. Graham performed a one-time mental health examination of Claimant and essentially opined that Claimant does not suffer from any mental impairments or functional limitations as a result of any mental impairments. R. 419-21. However, a month after Dr. Graham's examination, Claimant's treating psychiatrist referred him for a neuropsychological evaluation to rule out dementia. R. 443. The stated purpose of the evaluation was to "assess [Claimant's] current neurocognitive functioning due to reported progressive cognitive changes." R. 634. Though the neuropsychological report is not in the record, the summary of the results of

[9] As previously mentioned, Claimant argues that the ALJ failed to develop a full and fair record because he did not obtain his podiatrist records from 2005-2006. Doc. No. 26 at 3. However, given the date of the podiatrist records, the ALJ had no duty to obtain them. Furthermore, the Claimant has not demonstrated clear prejudice due to the lack of his podiatrist records since the ALJ considered his feet impairments (R. 19, 25) and there is no indication in the medical evidence or record that Claimant has functional limitations as a result of his feet impairments (*see* R. 236-668).

[10] There is no indication that the ALJ even attempted to obtain the neuropsychological report. *See* R. 1-668. Despite this fact, the Commissioner focuses on Claimant's actions, or lack thereof, with respect to presenting the neuropsychological report as evidence of his disability, and essentially argues that Claimant's inaction is reason enough to reject his argument that the ALJ failed to develop a full and fair record. Doc. No. 28 at 8-10. Despite the Commissioner's suggestion that Claimant invited the error, the Court finds, under the circumstances of this case, that it is unreasonable to conclude that Claimant, who was unrepresented and found to be suffering mental impairments that affected his mental faculties (R. 23), invited the error he now raises. *Cf. Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 969 (11th Cir. 2013) (finding that any error by the ALJ in developing a full and fair record by not obtaining recent medical records was invited since claimant's attorney represented to the ALJ that the record was complete).

the neuropsychological evaluation detailed above stand in stark contrast to Dr. Graham's findings and opinions concerning Claimant's mental health, as well as the opinions contained in the PRT's performed on June 24, 2010 and October 22, 2010. *Compare* R. 622 *with* R. 419-21, 449-62, 583-96. Given the summary of the neuropsychological evaluation, the Court finds that the neuropsychological report will more than likely contain medical opinions relevant to Claimant's functional capabilities and indicate that his functional capabilities are more restricted than those found by the ALJ. Accordingly, the Court finds that the ALJ's failure to obtain the neuropsychological report results in clear prejudice to Claimant.[11]

## III. CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and
2. The Clerk is directed to enter judgment for Claimant and close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 25, 2014.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Joseph L. Brinkley
Administrative Law Judge

[11] The Court finds this issue dispositive and does not address Claimant's remaining arguments because on remand the ALJ must reassess the entire record. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir.1983).

c/o Office of Disability Adjudication and Review
Nat'l Hearing Center
5107 Leesburg Pike
Falls Church, VA 22041